Case 3:10-cv-03973-JAP -TJB   Document 46   Filed 03/28/12   Page 1 of 9 PageID: 628

NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BROKERS' SERVICES MARKETING GROUP, et al., :<br><br>Plaintiffs, :<br><br>v. :<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, :<br><br>Defendant. : | Civil Action No. 10-3973 (JAP)<br><br>**OPINION** |

PISANO, District Judge:

  Plaintiff Brokers' Services Marketing Group ("Brokers' Services") brought this class action Complaint against Defendant Cellco Partnership, d/b/a Verizon Wireless ("Verizon") on August 4, 2010. The Complaint alleges that Verizon improperly billed Brokers' Service and similarly-situated consumers for text messages, in connection with the use of certain devices that are incapable of sending or receiving text messages. On October 20, 2010, Verizon filed a Motion to Compel Arbitration and Stay the Litigation, citing an arbitration agreement in the standard contract between Verizon and the alleged class of aggrieved consumers [docket entry no. 7]. This Court terminated the Motion and stayed the litigation pending the United States Supreme Court decision in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740 (2011) [docket entry no. 16]. That case was decided in April 2011, and this case was reopened on June 2, 2011 [docket entry no. 26]. Brokers' Services amended its Complaint, adding Plaintiff Torsha Hicks, on July 18, 2011 [docket entry no. 28].

Presently before the Court is Verizon's renewed Motion to Compel Arbitration and Stay the Litigation [docket entry no. 30], filed in light of the Supreme Court's decision in *Concepcion*. This Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the following reasons, this Motion will be granted.

**I.      Factual Background**

Plaintiffs allege that they entered into contracts with Verizon for mobile broadband service. Amend. Compl. ¶ 16. Use of the service requires the purchase and use of a device that connects Verizon's wireless network with the consumer's computer. *Id.* at ¶¶ 11-15. These devices are assigned ten-digit telephone numbers, but are physically incapable of making or receiving phone calls and text messages. *Id.* Use of the service also requires the consumer to purchase a monthly data plan, which does not include text messages. *Id.* at ¶ 12. Nevertheless, Plaintiffs allege that Verizon charged them for text messages, at a rate of twenty cents per message, in connection with their mobile broadband service. *Id.* at ¶¶ 18-20. Plaintiffs therefore instituted this class action lawsuit, claiming violations of the Federal Communications Act, breach of contract, violations of the New Jersey Consumer Fraud Act, and unjust enrichment. *Id.* at ¶¶ 33-37, 42-62.

The contract for mobile broadband service that Broker's Services originally signed in 2003 incorporated by reference a customer agreement, which includes an arbitration provision. The contract provides as follows:

> BY SIGNING THIS FORM YOU'RE AGREEING TO THE ATTACHED
> CUSTOMER AGREEENT . . . THE CUSTOMER AGREEMENT SETS YOUR
> AND OUR RIGHTS CONCERNING . . . SETTLEMENT OF DISPUTES BY
> NEUTRAL ARBITRATION AND OTHER MEANS INSTEAD OF JURY
> TRIALS . . . .

Verizon Mot. to Compel, Ex. 1 at 7.  The customer agreement includes a page entitled "Dispute Resolution and Mandatory Arbitration," which requires both parties to "settle disputes (except certain small claims) only by arbitration," and which also contains an agreement that the Federal Arbitration Act applies.  *Id.*, Ex. 2 at CA-P.5.  Broker's Services has signed slightly differing versions of this standard agreement on various occasions, such as when purchasing new equipment or upgrading their accounts, most recently on February 27, 2010.  *Id.*, Borelli Decl. ¶¶ 5-6.  In addition to a similarly unambiguous arbitration agreement, the latest customer agreement expressly bars class arbitrations, and limits relief to that "warranted by . . . individual claim[s]." *Id.*, Ex. 7 at 15.  Plaintiff Torsha Hicks signed a contract containing the same arbitration clause on February 13, 2010, and renewed that contract in July 2011.  *Id.*, Ex. 8 at 2, Ex. 9 at 3.  Because the specific language used in these arbitration clauses is not central to the present dispute, it is not fully reproduced here.

    **II.**    **Legal Standard**

The Court must first determine whether the agreement to arbitrate is valid, and then decide whether the dispute falls within the agreement's scope.  *Gay v. CreditInform*, 511 F.3d 369, 386 (3d Cir. 2007).  An agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation or any contract." 9 U.S.C. § 2.  The Federal Arbitration Act ("FAA") requires a court to stay a proceeding in favor of arbitration "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration."  9 U.S.C. § 3.  "[T]he [Federal Arbitration Act] establishes a strong federal policy in favor of the resolution of disputes through arbitration," and such agreements are presumptively enforceable.  *Brennan v. Cigna Corp.*, 282 Fed. Appx. 132, 135 (3d Cir. 2008).  *See also Great Western Mortg. Corp. v. Peacock*, 110 F.3d 222 n.25 (3d Cir. 1997).  "[A]ny doubts concerning

3

the scope of arbitrable issues should be resolved in favor of arbitration." *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

As with any other contract, a party to an arbitration agreement may claim that it is unenforceable based on any of the "generally applicable contract defenses, such as fraud, duress, or unconscionability . . . ." *Concepcion*, 131 S. Ct. at 1745-46. Thus, courts will apply state contract rules to determine whether an arbitration agreement is enforceable, unless the applicable state law is preempted by the FAA. *Id.* at 1746.

### III. The Motion to Compel Arbitration

The instant Motion argues that the above-quoted arbitration agreements are valid and enforceable, that this litigation clearly falls within their scope, and that therefore this litigation must be stayed. Verizon claims that the Supreme Court decision in *Concepcion* definitively closes the matter in its favor, by confirming the enforceability of class-action waivers within arbitration agreements. Plaintiffs argue in opposition that *Concepcion* had no effect on a body of law which would hold the arbitration agreement unenforceable in this case. They claim that under the federal substantive law of arbitrability, arbitration clauses may not be enforced where they effectively deprive plaintiffs of the ability to bring their federal statutory claims. Plaintiffs argue that the class-action waiver in this arbitration clause would preclude them from bringing their claims at all, because it is infeasible to bring them individually.

As to the first prong of the Court's analysis of this agreement, there is no dispute as to its procedural validity. *See*, *e.g.*, *Concepcion*, 131 S. Ct. at 1746 (describing the difference between procedural and substantive unconscionability). Rather, the parties dispute whether or not the agreement is enforceable as applied to Plaintiffs' claims as a matter of law. The second prong of

4

the Court's analysis is uncontroversial: this arbitration agreement is broad in scope and applies to Plaintiffs' claims.

As a threshold matter, the Court will address whether the class-action waiver is separable from the core of the agreement, which is to settle all disputes by arbitration. The Third Circuit recently held that an arbitration agreement was ambiguous with regard to attorneys' fees and a class-action waiver, but that these ambiguities must be resolved by the arbitrator. *Quilloin v. Tenet Healthsystem Phila., Inc.*, No. 11-1393, 2012 U.S. App. LEXIS 5353, at *21-23 (3d. Cir. March 14, 2012) ("Rather than speculate as to whether a certain interpretation of an ambiguity might render an arbitration agreement unenforceable, 'the proper course [in such a case] is to compel arbitration.'") (quoting *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406-07 (2003)). The Plaintiffs nominally argue that the arbitration agreement is the problem, when in fact the class-action waiver is the only part that ostensibly creates an obstacle to the pursuit of their claims. Thus, the issue that has been presented to this Court is the enforceability of the class-action waiver as applied to a specific class of consumer disputes raising federal statutory claims. By distinguishing the enforceability of an agreement to arbitrate and the enforceability of an ancillary part of that agreement, *Quilloin* and *Pacificare* suggest that a dispute solely over the class-action waiver might be itself arbitrable. However, the dispute in this case is not a matter of interpreting the language in the arbitration agreement, which the Court should leave to the arbitrator. Whether or not class-action waivers are enforceable when they preclude plaintiffs from bringing federal statutory claims is a question of law for the Court.

### IV.   Legal Analysis

Verizon asserts that *Concepcion* disposes of Plaintiffs' argument, by affirming the enforceability of class-action waivers in arbitration agreements. However, *Concepcion*'s specific

holding was that class action waivers in arbitration agreements are enforceable in spite of state law prohibiting them, because such state law is preempted by the FAA. *Concepcion*, 131 S. Ct. at 1744; *Quilloin*, 2012 U.S. App. LEXIS 5353, at *23-25. Plaintiffs' argument is not based on state law. Nor do Plaintiffs claim that the mere inclusion of a class action waiver renders the agreement unenforceable as a matter of public policy. Rather, they claim that the federal substantive law of arbitrability renders arbitration agreements unenforceable where they preclude plaintiffs from bringing federal statutory claims at all. *See*, *e.g.*, *Mitsubishi Motors Corp. v. Soler-Chrysler Plymouth, Inc.*, 473 U.S. 614, 637 (1985) ("[S]o long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."). Plaintiffs assert that the class-action waiver effectively deprives them of their ability to bring the Federal Communications Act claims asserted here. They cite the standard justifications for class actions, most importantly the small amount in controversy in the claims compared to the burden of prosecuting them.

      Plaintiffs are correct that the Supreme Court and the Third Circuit have not addressed the precise argument they advance here, based on substantive federal law. *Concepcion* upheld the validity of class-action waivers in the face of conflicting state law. In *Johnson v. West Suburban Bank*, 225 F.3d 366 (3d Cir. 2000), the Third Circuit held that there was no "irreconcilable conflict" between an arbitration clause and the particular federal statutes at issue in that case. In *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012), the Supreme Court similarly rejected a claim that a federal statute inherently conflicted with the FAA's mandate to favor arbitration agreements. Thus, Plaintiffs argue, the line of cases they cite remains undisturbed.

      Indeed, post-*Concepcion* decisions in the Second Circuit have continued to make the distinction cited by Plaintiffs. Explicitly distinguishing the Supreme Court decision in

*CompuCredit*, the Second Circuit held in February 2012 that arbitration agreements may still be unenforceable against plaintiffs who show that the forum would effectively prohibit them from bringing their claims. *Italian Colors Rest. v. Am. Express Travel Related Servs. Co.* (*In re Am. Express Merchs. Litig.*), 667 F.3d 204, 213 (2d Cir. 2012). According to the Second Circuit, the Supreme Court decision in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000) is still "controlling . . . to the extent that it holds that when 'a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.'" *Id.* at 217 (quoting *In re Am. Express Merchs. Litig.*, 554 F.3d 300, 315 (2d Cir. 2009)). *See also Sutherland v. Ernst & Young LLP*, No. 10-3332, 2012 U.S. Dist. LEXIS 5024 (S.D.N.Y. Jan. 17, 2012); *Raniere v. Citigroup, Inc.*, No. 11-2448, 2011 U.S. Dist. LEXIS 135393 (S.D.N.Y. Nov. 22 2011).

Nevertheless, Plaintiffs' argument is based entirely on Second Circuit cases, and it cannot be squared with the reasoning of either the Supreme Court or the Third Circuit. The Supreme Court and the Third Circuit have recently upheld arbitration agreements with class-action waivers, even where they effectively rendered federal statutory claims unavailable. *CompuCredit*, 132 S. Ct. 665; *Johnson*, 225 F.3d 366. True, neither opinion explicitly rejected the Second Circuit cases cited by Plaintiffs. However, both *CompuCredit* and *Johnson* rejected the premise that those cases are cited for: that a class-action waiver is unenforceable because it effectively prevents plaintiffs from bringing a federal statutory claim at all. *CompuCredit*, 132 S. Ct. at 669 (arbitration agreements must be enforced "even when the claims at issue are federal statutory claims."); *Johnson*, 225 F.3d at 369 ("[arbitration] clauses are effective even though they render class actions to pursue statutory claims under the TILA or the EFTA unavailable."). Both held that the federal statutes at issue did not create an un-waivable right to bring class-

7

action suits. In *CompuCredit*, a "right to sue" provision and a non-waiver provision were not enough to overcome the presumed validity of arbitration agreements as established by the FAA. *CompuCredit*, 132 S. Ct. at 669-72. In *Johnson*, the Third Circuit recognized that Congress may even explicitly favor class actions as a means of enforcing a particular statute without "preclud[ing] private parties from contracting around their availability." *Johnson*, 225 F.3d at 375-76.

This is consistent with the reasoning in *Concepcion*, which referred to arguments asserting the importance of maintaining the availability of class actions as "unrelated policy concerns." The Court held that such policy reasons for class actions, "however worthwhile, cannot undermine the FAA." *Concepcion*, 131 S. Ct. at 1753. *Concepcion* also described at length the incompatibility of class actions and arbitration. Conceding that class arbitration is possible and does occur, the Court held that "[c]lass arbitration, to the extent it is manufactured by [a court] rather than consensual, is inconsistent with the FAA." 131 S. Ct. at 1750-51.

The Court also finds the reasoning of the Ninth Circuit instructive in rejecting the Second Circuit approach urged by Plaintiffs. Facing substantially identical claims as those asserted here, the Ninth Circuit noted that the plaintiffs' concern was

> not so much that customers have no effective means to vindicate their rights, but rather that customers have insufficient incentive to do so. That concern is, of course, a primary policy rationale for class actions. . . . But as the Supreme Court stated in *Concepcion*, such unrelated policy concerns, however worthwhile, cannot undermine the FAA.

*Coneff v. AT&T Corp.*, 2012 U.S. App. LEXIS 5520, at *8-9 (9th Cir. Mar. 16, 2012) (citing *Concepcion*, 131 S. Ct. at 1753). As in the Ninth Circuit, the Plaintiffs here do not claim that it is impossible to seek their recovery in the manner prescribed by the arbitration agreement, but

8

only that it would be an economically irrational decision to do so.  The Supreme Court has held that this rationale for class actions cannot override the FAA.

The Ninth Circuit also noted that even if there were a conflict between *Concepcion* and earlier Supreme Court cases on the federal substantive law of arbitrability, *Concepcion* "more directly and more recently addresses" this issue.  *Id.* at *9-10 (citing *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)).

**V.     Conclusion**

For the foregoing reasons, the Plaintiffs' claim that the arbitration agreement is unenforceable as applied to their claims is inconsistent with recent Supreme Court and Third Circuit precedent.  Therefore, the Defendant Verizon's Motion to Compel Arbitration and Stay the Litigation will be granted.  An appropriate Order follows.

        /s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated:  March 28, 2012

9